Matter of Bank of N.Y. (Blumenkrantz) (2021 NY Slip Op 02592)





Matter of Bank of N.Y. (Blumenkrantz)


2021 NY Slip Op 02592


Decided on April 29, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 29, 2021

Before: Webber, J.P., Singh, González, Shulman, JJ. 


File No. 212P 1961/B/C Appeal No. 13692 Case No. 2020-04459 

[*1]Accounting of the Bank of New York, as Trustee of the Trust Under Article Sixth of the Will of Max Blumenkrantz, Deceased.
In the Matter of BNY Mellon, N.A., as Trustee, Petitioner-Appellant,
Marshall Feldman et al., Respondents-Respondents.


Emmet, Marvin & Martin, LLP, New York (Paul T. Weinstein of counsel), for appellant.
Adam Leitman Bailey, P.C., New York (Jeffrey R. Metz of counsel), for respondents.



Interim decree, Surrogate's Court, Bronx County (Nelida Malave-Gonzalez, S.), entered July 7, 2020, which, insofar as appealed from, sustained the objections of Marshall and Gary Feldman to petitioner's accounts, unanimously modified, on the law, to dismiss objection 28 and so much of objection 3 as complains that the lease for 197 South Van Brunt Street was below market, and otherwise affirmed, without costs.
The Surrogate properly sustained the objections relating to the foreclosure sale. A "trustee is bound to employ such diligence and . . . prudence in the care and management of the trust, as in general, prudent [persons] of discretion and intelligence in such matter, employ in their own like affairs" (Matter of Janes, 90 NY2d 41, 50 [1997] [internal quotation marks and some brackets omitted]). "Generally, whether a fiduciary has acted prudently is a factual determination to be made by the trial court" (id.; see also Matter of Hubbell, 302 NY 246, 258 [1951]).
The Surrogate properly found that it was imprudent for petitioner — which learned on May 22, 2001 about a foreclosure sale scheduled for Wednesday, June 13 — to (1) wait until June 4 to obtain documents and Friday, June 8 to inform objectants and (2) not consult its own attorney, as opposed to counsel for the plaintiff in the foreclosure action. Had petitioner consulted its own lawyer, it likely would have learned that, as the owner (as trustee of the trust for Sylvia Schester) of an undivided one-third interest in the subject property, it was entitled to notice of the foreclosure sale (see Burbach v Sussex County Mun. Util. Auth., 318 NJ Super 228, 229-230, 232-235, 723 A2d 137, 138, 141 [App Div 1999]).
The Surrogate properly sustained objections 5, 30, and 6(c)-(e). Evidence in the record, including the testimony of the officer in charge of the Schester trust and the Feldman distributive account, supports objectants' claims.
Petitioner contends that the releases that objectants signed in 1998 preclude their current objections to the renewal of the lease. Objectants claim the Surrogate held the releases were not binding. The record indicates that the Surrogate implicitly ruled that the releases were valid. "[R]eleases have long been a preferred method of settling fiduciary accounts" (Matter of Abrams, 242 AD2d 450, 450 [1st Dept 1997]). The Surrogate correctly stated that (1) a release signed in the absence of bad faith, fraud, or duress, and with full knowledge of the estate's status, would generally be upheld as valid, and (2) objectants had presented no evidence of any bad faith, fraud, or duress on petitioner's part in obtaining the 1998 receipts and releases.
Objectants released petitioner as to actions taken through April 29, 1997; petitioner entered into the lease as of May 15, 1996. Hence, objectants may not now challenge the terms of the lease. To the extent objection 3 complains that the "below market lease agreement provided for annual lease payments based upon [*2]warehouse space, rather than medical office space," it should have been dismissed. However, to the extent objection 3 alleges more generally that petitioner "was negligent in failing to properly manage . . . 197 South Van Brunt Street," it is not barred by the 1998 releases.
The lease gives "Tenant" the right to renew and defines "Tenant" as "Englewood Health Care Properties, Inc." However, it also says, "The obligations of this Lease shall bind and benefit the . . . assigns of the parties with the same effect as if mentioned in each instance where a party is named or referred to." The Surrogate previously ruled on summary judgment that Northern New Jersey Dialysis, L.L.C. (NNJD) was a proper assignee.
While after trial, the Surrogate stated that it could not find that petitioner was bound to renew the lease on the terms it did in 2006, given that (1) the 1996 lease, which sets forth the renewal terms, was covered by the 1998 releases, and (2) NNJD was a proper assignee, the landlord — which included petitioner — was required to allow NNJD to renew on the same terms as the original tenant; otherwise, petitioner would have been in breach of the lease. Accordingly, objection 28 — which complains that the rental income since May 2006 has not been "fair" — should have been dismissed.
Objectants contend that the tenant was in default because it had failed to convert 16,960 square feet of the subject property into a fully renovated, heated, and air-conditioned medical center, as required by the lease; therefore, it did not have the right to renew. Objectants may not raise this argument on appeal as the Surrogate precluded it because it had not been made in the objections.
The lease says, "Within sixty . . . days of receiving Tenant's notice to exercise [its] right to an Extended Term, the Landlord shall notify Tenant of the proposed Fixed Rent payable during such option period." Petitioner received Tenant's notice on or about October 13, 2005 but did not notify it of the new Fixed Rent until May 6, 2006. As the Surrogate noted, if Tenant had decided to reject the new Fixed Rent (as it had the right to do under the lease), petitioner would have had to find a new tenant upon very short notice, as the original lease was set to expire on or about May 15, 2006.
"[W]hile a court should not view each act or omission aided or enlightened by hindsight, a court may, nevertheless, examine the fiduciary's conduct over the entire course of the investment in determining whether it has acted prudently" (Janes, 90 NY2d at 50 [citation and italics omitted]). Thus, they could properly consider this failure to notify the tenants of a new fixed rent as part of "a pattern by the trustee of not properly managing this property with the diligence required of a trustee with special skills."
With respect to objections 2 and 27, petitioner contends that it had to pay a commission to Team Resources, Inc. upon the lease renewal; otherwise, it would have been liable to Team [*3]Resources for breach of contract. However, petitioner's agreement with Team Resources is worded differently from the lease; it does not mention assigns.
Petitioner contends that objection 20 should have been dismissed because objectants presented no documentary evidence that the tax forms it sent were erroneous. However, petitioner cites no precedent preventing objectants from proving their case through testimonial evidence.
Finally, the Surrogate properly sustained objection 29. "Where there is a breach of duty of fiduciaries of a trust, beneficiaries are entitled to be put in [the] position they would have occupied if no breach [had been] committed" (Matter of Lasdon, 105 AD3d 499, 500 [1st Dept 2013], lv denied 22 NY3d 856 [2013]). If no breach had occurred, objectants would have started to receive higher rent in May 2006. Unless the lump-sum payment in April 2007 included interest, objectants were not put in the same position they would have occupied if no breach had occurred, due to the time value of money. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 29, 2021